IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY, | CV 22–129–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| JAYSEN C. MCCLEARY and BELA ANIMAL LEGAL DEFENSE AND RESCUE, | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Summary Judgment.  (Doc. 15.)

For the reasons herein, the Motion for Summary Judgment is granted.

## BACKGROUND[1]

### I.     The Policies

On April 3, 2018, Defendant Jaysen McCleary applied for a Homeowner's

Policy through Plaintiff Mountain West Farm Bureau Mutual Insurance Company

("Mountain West") for his property located at 1763 Red Cross Road, Victor,

Montana.  Mountain West issued Homeowner's Policy Number 4HM5090 to

McCleary, with a policy term of April 6, 2018, to April 6, 2019  The policy was

---

[1] The facts set forth below consist of those facts which are undisputed or have been deemed substantively undisputed by the Court.

renewed three times: from April 6, 2019, to April 6, 2020; from April 6, 2020, to

April 6, 2021; and from April 6, 2021, to April 6, 2022.  The Homeowner's policy

included the following conditions:

> "We" have no duty to provide coverage under this policy if "your"
> failure to comply with the following duties is prejudicial to "us."  In
> case of an "occurrence," an "insured" will perform the following
> duties that apply:
>> a.  Promptly give notice to "us" or "our" agent, which sets
>>     forth:
>>     (1) The identity of the policy and "insured"'
>>     (2) Available information on the time, place and facts of the
>>         "occurrence";
>>     (3) Names and addresses of any claimants and witnesses.
>> b.  Cooperate with "us" in the investigation, settlement or
>>     defense of any claim or suit.
>> c.  Immediately forward to "us" every notice, demand,
>>     summons or other information relating to the "occurrence."
>> d.  Submit to an examination under oath at such time(s) as "we"
>>     may reasonably require. If more than one person is
>>     examined, "we" have the right to examine and receive
>>     statements separately from each person and not in the
>>     presence of others.
>> e.  At "our" request, assist in:
>>     (1) Making settlement;
>>     (2) Enforcing any right of contribution or indemnity against
>>         anyone who may be liable to an "insured";
>>     (3) The process of legal action and attend hearings and trials;
>>     (4) Securing and giving evidence as requested; and
>>     (5) Providing information and location of witnesses.
>
> An "insured" will not, except at their own cost:
>> a.  Offer any payment;
>> b.  Assume any obligation; or
>> c.  Incur any expense other than for first aid to others at
>>     the time of the "occurrence."

The Homeowner's policy contained exclusions for injuries and damage arising out of, as relevant here, personal and advertising injury, which was defined as:

> injury including consequential injury, arising out of any of the following offenses:
>
> . . .
>
> 4. Oral or written publication in any manner of material that:
> a.      Libels or slanders a person or entity.
> b.      Disparages any person or entity's goods, products or services.
> c.      Violates a person's right or privacy.

The Homeowner's policy was effective through April 20, 2021.  On May 3, 2021, Mountain West issued McCleary Country Home Policy Number CQM17921 with a policy term of May 3, 2021 to May 3, 2022.    The Country Home Policy included the following pertinent language:

> 19. **Policy Period.** This policy applies only to "occurrences" that take place during the policy period shown in the "Declarations."

The Country Home Policy included the following Umbrella Coverage provisions under Under Section V – Umbrella:

> "We" will pay all sums for which an "insured" is legally liable because of "bodily injury," "property damage" or "personal and advertising injury" caused by an "occurrence" to which this coverage applies. If coverage applies, "we" will pay up to "our" limit of liability shown in the "Declarations."
>
> This coverage applies only to damages in excess of the minimum required underlying limit or the "retained limit," whichever applies.

3

## DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE

1. "We" will defend any suit seeking damages for "bodily injury," "property damage," or "personal and advertising injury" covered by this policy that are not payable under the terms of the "underlying insurance."

2. "We" will provide a defense at "our" expense with counsel of "our" choice. "We" may make any investigation and settlement of any claim or suit that "we" decide is appropriate.

3. "We" will pay expenses incurred by "us" and costs taxed against any "insured" in any suit "we" defend.

4. "We" will pay the cost of bonds required in a suit defended by "us." The bond cannot be more than the limit of liability provided by this policy. "We" are not obligated to apply for or furnish any bond.

5. "We" will pay reasonable expenses incurred by an "insured" at "our" request, including actual loss of earnings (but not loss of other income), up to $250 per day for assisting "us" in the investigation or defense of any claim or suit.

6. "We" will pay interest on "our" share of the judgment that accrues after entry of the judgment in any suit "we" defend and before "we" pay, tender or deposit in court that part of the judgment that does not exceed the limit of liability that applies.

7. "We" will pay any sums incurred, other than the sums paid to actually settle damages claimed or sued for in addition to "our" liability limit, and "you" do not have to pay any part of them. "You" do have to promptly repay "us" any sums "we" paid to settle damages within "your" "retained limit." If "we" are prevented by law or otherwise from carrying out this provision, "we" will pay the amount incurred.

**EXCLUSIONS APPLICABLE TO "BODILY INJURY,"
"PROPERTY DAMAGE" OR "PERSONAL AND
ADVERTISING INJURY "**

"We" do not cover damages for "bodily injury," "property damage" or
"personal and advertising injury" either actual or alleged arising out of
any of the following:

. . .

8. "Business" Activities. Any "business" activities of any "insured,"
except to the extent that coverage is provided by the "underlying
insurance" for "business" activities coverage as shown in the
"Declarations."

. . .

17. Directors and Officers. An "insured's" duties or activities as a: a.
director; b. executive officer; c. stockholder of any corporation,
partnership, joint venture or other organization for which there is
compensation

. . .

25. Intended or Expected Loss. Any loss that:
a. Is intended, expected or directed by any "insured";
b. Arises out of intentional or malicious acts of any "insured"; or
c. Would reasonably be expected to result from intentional or
malicious acts of any "insured." This exclusion applies whether or not
the resulting "bodily injury" or "property damage":
> a. Is of a different sort, quality or extent than might have been
> initially expected or intended; or
> b. Is incurred to a different person, entity or property than
> initially expected or intended.

. . .

35. "Personal and Advertising Injury."
"We" do not cover damages either actual or alleged arising out of
"personal and advertising injury":
a. At the direction of or caused directly by an "insured." This
exclusion only applies if an "insured" had knowledge or had reason to

5

know that the act would cause "personal and advertising injury" to another.

b. Arising out of the publication of material, either oral or written, if an "insured" had knowledge or had reason to know of its falsity.

c. Arising out of the publication of material, either oral or written, if the material was first published before the policy period.

. . .

39. "Professional Liability." Any professional liability of an "insured," except to the extent that coverage is provided by the "underlying insurance" for "professional liability" as shown in the Declarations.

. . .

40. Punitive/Exemplary. Punitive, exemplary or multiples of damages, fines, penalties, assessments or any other such award or finding.

## II.    The Underlying Actions

On December 19, 2018, Thomas William Starbuck and his daughter, Aynsley Ann Starbuck, (collectively "Underlying Plaintiffs") filed a Petition with the Iowa District Court in Polk County, Iowa, alleging 33 counts of defamation and two counts of punitive damages against McCleary ("the Defamation Action"). Specifically, Underlying Plaintiffs alleged that McCleary had repeatedly stated, either verbally, through publication, or republication, that William Starbuck had molested Aynsley Starbuck.  McCleary was served with the Petition on January 25, 2019.  The Underlying Plaintiffs amended their petition twice, adding eight counts of defamation on May 5, 2019, and 16 counts of defamation on June 2, 2019, for a

6

total of 57 counts of defamation and two counts of punitive damages for conduct that allegedly occurred from December 19, 2016, through May 14, 2019. Many of the alleged defamatory statements were made while McCleary was representing himself or others in civil litigation or while representing himself in criminal proceedings.

McCleary, appearing pro se, filed his answer in the Defamation Action on September 19, 2019, and denied the allegations. He asserted several affirmative defenses including truth, ambiguity, failure to state a cause of action, statute of limitations, laches, failure to mitigate, waiver, no damage to plaintiff, and unclean hands.

On March 19, 2020, Underlying Plaintiffs filed a motion for summary judgment arguing that McCleary's statements were "false, without a factual or legal basis." In addition, Underlying Plaintiffs argued that McCleary failed to provide evidence to support his allegations. On August 28, 2020, during a phone hearing, McCleary argued that the motion for summary judgment should be denied because of two affirmative defenses: truth and litigation privilege. McCleary did not file a response brief to the motion for summary judgment. On September 15, 2020, the Iowa District Court issued a ruling denying McCleary's truth defense and granting McCleary 30 days to establish how each allegedly defamatory statement was subject to litigation privilege. The court further advised McCleary that "if he

does not file such a brief, the Court will find that [McCleary] has not met his burden and will rule that the litigation privilege does not apply to the statements." McCleary did not file a brief regarding the litigation privilege. On November 2, 2020, the court granted Underlying Plaintiffs' motion for summary judgment and found McCleary liable for the defamatory statements but kept the scheduled trial setting in place for the sole purpose of determining damages.

On November 4, 2020, McCleary filed a brief titled "Brief to Reconsider Ruling for Motion for Summary Judgment Filed October 15, 2020 (inadvertently did not get filed)." On November 5, 2020, the Iowa District Court issued an order denying McCleary's request and reasserting its November 2, 2020, order.

Prior to the damages trial, McCleary filed several motions requesting a continuance or stay of the damages trial or leave to appear remotely. The motions were denied, and on June 7, 2021, the court proceeded with the damages trial. McCleary, still proceeding pro se, did not appear. The jury awarded Underlying Plaintiffs a total of $8,000,000: $1,700,000 in compensatory damages to Thomas; $800,000 in compensatory damages to Aynsley; $4,500,000 in punitive damages to Thomas; and $1,000,000 in punitive damages to Aynsley.

On December 6, 2021, Underlying Plaintiffs filed a petition for equitable relief ("the Collections Action") against McCleary and Bela Animal Legal Defense Fund and Rescue ("Bela"), alleging one count of fraudulent conveyance and one

count of piercing the corporate veil.  Specifically, Underlying Plaintiffs alleged that on June 17, 2021, McCleary transferred $65,000.00 from his personal banking account into Bela's banking account and that, on December 4, 2021, McCleary transferred ownership in his Jeep Gladiator Rubicon to an automobile dealership. The December 4 transfer occurred after the court had enjoined McCleary from transferring assets.  On October 20, 2022, the court found McCleary in contempt in the Collections Action.

On October 31, 2022, McCleary, now represented by Mountain West's retained counsel, appealed the Defamation Action judgment.  In the opening brief, McCleary argued that the alleged defamatory remarks were protected by litigation privilege.

On November 29, 2022, the Iowa District Court issued a sentencing order in the Collections Action.  The court imposed a $500 fine and sentenced McCleary to 30 days in jail, with all but seven days suspended.  The court ordered that as an alternative to serving the custodial time, McCleary could provide his counsel with $10,679.33 to be held in trust to offset the funds spent in violation of the court's injunction.

On February 23, 2023, the Iowa Court of Appeals issued its opinion in the defamation action, ruling that the district court did not err in granting summary judgment in Underlying Plaintiffs' favor on McCleary's liability for defamation.

9

However, the Iowa Court of Appeals vacated the district court's judgment for damages and remanded for a new trial on damages.

On May 24, 2024, Mountain West posted the $10,679.33 on McCleary's behalf under a full reservation of rights.

On June 7, 2023, the Iowa Supreme Court denied further review of the February 23, 2023, Iowa Court of Appeals order that remanded the Defamation Action for a new damages trial but upheld the entry of summary judgment on liability against McCleary.  The district court is set to retry the issue of damages in April 2024.

### III.   The Claim

On June 30, 2021, Mountain West agent John P. Neuman sent McCleary an email "following-up on [his] take-aways" from a conversation between Nueman and McCleary and attached an electronic copy of a policy.  Nueman wrote "Defamation – I know you had a question about this, but I cannot recall the context of it.  My apologies.  A good place to start to answer your question is on your insurance policy coverage book (printed or attached).  If that doesn't answer your question I can ask by [sic] underwriter."

On April 6, 2022, McCleary submitted a claim report form to Mountain West seeking coverage under the Country Home Policy.  McCleary described the loss as "Attorney Misconduct" and reported that the loss occurred on June 7, 2021,

in Missoula and Iowa.  He reported the extent of injuries to be "8 million default

judgment for defamation" and listed "Jaysen, Thomas Starbuck, [and] Michael

Kent" as the other parties involved.

On May 10, 2022, McCleary sent an e-mail to John Neuman of Mountain

West with the subject line "This is a Claim for $140,500 under my umbrella

policy."  The e-mail read:

> Mr. Neuman,
>
> Why do I have 1749000 in personal prop coverage?
>
> 466,400 in loss of use?
>
> What is inland marine coverage?
>
> Is my female white bison covered or my other 23 bison?
>
> I need to make a claim with this default judgment for defamation[.]
>
> I have paid attorneys fees 12,500 and they illegally condemned over
> 13,000 of my disability money, and they've enjoined 55,000 of my
> sale of my old truck.
>
> And I need post judgment representation in Iowa. My appellate
> attorney has an attorney for me to hire for post judgment.
> I also need an attorney for contempt hearings as I am a victim of [a]
> low life broke attorney who stalked me and targeted me for this
> defamation scam.
>
> I've also been sanctioned for stupid things like trying to save a
> homeless man's dog. 25,000 and I was sanctioned 30,000 for trying to
> get justice for my client who had her constitutional rights violated.
>
> I need to make a claim for all of these amounts. The insurance
> adjuster had full access to all of these cases[,] and I spoke to her. I got

11

the impression she was trying to figure out how to not cover this
under my liability policy.

85,500 plus 55,000. And I need to bite [sic] two attorneys or at least
one. That is good at post judgment and counter filing claims of fraud
and can sue Bank of America for letting them illegally garnish my
disability money.

Please let me know by the end of this week whether my policy is
going to cover my losses and help me or not.

Thank you,
Jaysen

On May 24, 2022, Mountain West, through its attorney, sent McCleary a

reservation of rights letter through which it denied any duty to defend McCleary,

but stated that it would provisionally defend McCleary under a full reservation of

rights.  Mountain West indicated that various policy provisions may preclude

coverage for the Underlying Actions.  On June 23, Mountain West mailed

McCleary a Supplemental Reservation of Rights Letter which stated that certain

policy provisions may preclude a duty to defend McCleary or Bela in the

Underlying Actions.

## PROCEDURAL BACKGROUND

On August 1, 2022, Mountain West lodged its Complaint seeking a

declaratory judgment that it had no duty to defend or indemnify McCleary and

Bela in the Defamation Action or the Collections Action (collectively "the

Underlying Actions").  (Doc. 1.)  McCleary and Bela filed their answer on

December 12. (Doc. 5.) On December 20, the Court issued an order granting McCleary and Bela's unopposed motion to stay the duty to indemnify issue pending final resolution of the Defamation Action in Iowa state court. (Doc. 7.) In the order, the Court stayed the duty to indemnify issue "pending final resolution of the [defamation action] by the Iowa state court system, except that if this Court determines there is no duty to defend, before such resolution occurs, then this stay shall be automatically lifted." (*Id.* at 1.) On February 7, 2023, Mountain West filed its Amended Complaint. (Doc. 10.) McCleary and Bela filed their answer on February 21. (Doc. 11.)

On July 26, 2023, Mountain West filed the instant motion for summary judgment. (Doc. 15.) On December 20, 2023, Mountain West filed an unopposed motion for mediation, (Doc. 32), which the Court granted on December 20, (Doc. 33). On January 9, 2024, the parties filed a joint motion to withdraw the Court's referral to Judge Johnston, due to "issues arising . . . in the Iowa state court proceedings that underly this coverage action" which "prevent the parties from moving forward with mediation." (Doc. 38 at 2.) The Court granted the motion, (Doc. 39), and set a hearing on the pending motion for summary judgment, (Doc. 40). The Court heard oral argument on February 8, 2024. (Doc. 46.)

**LEGAL STANDARD**

The Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when there is sufficient evidence for a reasonable factfinder to return a verdict for the other party. *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). With these principles in mind, the Court turns to the merits of the issues presented.

**DISCUSSION**

Mountain West argues that, as a matter of law, it has no duty to defend or indemnify McCleary in the Underlying Action for several reasons: (1) because McCleary failed to provide Mountain West with timely notice of the dispute resulting in prejudice to Mountain West, (Doc. 16 at 11); (2) because no coverage exists under the country home policy because the underlying defamation claims arose prior to the inception of the country home policy, (*id.* at 17); (3) because Bela is not a covered person/entity under either of the policies, (*id.* at 18); (4) because McCleary cannot establish that coverage exists under the policies and

14

umbrella coverages' general coverage provisions, (*id.* at 18); (5) because coverage for the Underlying Actions are excluded under the intended or expected loss provisions because, as alleged, McCleary intentionally performed the actions underlying the counts, (*id.* at 31); (6) because the defamatory statements constitute personal and advertising injury excluded from coverage, (*id.* at 34); (7) because the business activities exclusion applies, (*id.* at 40); and (8) because the professional liability exclusion applies, (*id.* at 42).

In response, McCleary argues that in 2018 Mountain West failed to properly procure McCleary's insurance, and therefore the Court should extend the Country Home Policy coverage, including its umbrella provisions, back to 2018.  (Doc. 25 at 5.)  McCleary further argues that the Country Home Policy's personal and advertising umbrella coverage covers the conduct complained of in the Defamation Action, (*id.* at 11), and because the Collections Action is so intertwined with the Defamation Action, Mountain West's duty to defend the Defamation Action extends to the Collections Action, (*id.* at 26).  McCleary also contends that no exclusions apply that would bar coverage, (*id.* at 16), that Mountain West should be estopped from relying on the notice-prejudice rule, (*id.* at 22), and that Mountain West cannot disclaim its duty to defend in the Collections Action because it failed to name Bela as an insured in the Country Home Policy, (*id.* at 28).

15

Because the Court finds that no coverage for the Underlying Actions exists under the policy that was in effect at the time of the alleged occurrences—the Homeowner's Policy—it need not address the other arguments.

Because this Court is exercising its diversity jurisdiction over this matter, Montana's substantive law applies. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Under Montana law, "[t]he interpretation of an insurance contract is a question of law." *Park Place Apts., L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010). "When a court reviews an insurance policy, it is bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011). When an insurance policy is ambiguous, it should be interpreted in favor of extending coverage for the insured; but if "the language of a policy is clear and explicit, the policy should be enforced as written." *Id.*

The language of the Country Home Policy clearly and explicitly excludes coverage of the Underlying Actions. It is undisputed that the allegedly defamatory acts began December 19, 2016, and continued through May 14, 2019, (Doc. 26 at 6), that the Country Home Policy, including the umbrella coverage, took effect on May 3, 2021, (*id.* at 19), and that the policy excludes coverage for actual or alleged advertising injury "arising out of the publication of material, either oral or written,

16

if the material was first published before the policy period," (*id.* at 46).  As such, Mountain West has no duty to defend or indemnify any alleged defamatory acts that took place prior to May 3, 2021, including the Underlying Defamation Action.

McCleary argues that Mountain West failed to properly procure the policy McCleary requested in 2018, and therefore, the Country Home Policy's coverage extends back to April 6, 2018.  (Doc. 25 at 5.)  Specifically, McCleary contends that "because [he] detrimentally relied on Mountain West's agent to obtain  . . . the correct insurance coverage for the [p]roperty, this Court should conclude that the coverage provided for in the Country Home Policy [was] effective as of April 8, 2018."  (*Id.* at 17.)

This argument hits a snag almost immediately.  Even if the Court were to conclude that the umbrella coverage included in the Country Home Policy dated back to 2018, McCleary still did not notify Mountain West of the charges against him until, at the earliest, June 30, 2021, approximately seven and a half months after the Iowa District Court granted summary judgment in favor of Underlying Plaintiffs.

In 2015, the Montana Supreme Court expressly adopted the notice-prejudice rule.  *Est. of Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349, 356 (Mont. 2015).  This rule "allows an insurer to deny coverage based on a failure to comply

17

with a policy notice provision only if the insurer can demonstrate that it was prejudiced by the late notice." *Id.*

Under Montana law[2], courts may determine whether the notice-prejudice rule applies at the at the summary judgment stage. *See Steadele v. Colony Ins. Co.*, 260 P.3d 145, 151 (Mont. 2011) (affirming a district court's entry of summary judgment based upon an insurer's failure to notify the insurer of a pending claim). In *Steadle*, an injured third-party sued an insurance company seeking compensation from the insurer for damages caused by an insured. *Id.* at 147. The injured third party had previously sued the insured for negligence. *Id.* The insured failed to respond to the underlying action and the district granted a default judgment against them. *Id.* Two months later, the injured third party requested that the insurer satisfy the default judgment. *Id.* The insurer refused, and the injured third party sued. *Id.* at 147–48. Eventually, the district court granted summary judgment in favor of the insurer concluding that "there was no factual dispute that [the insured] failed to comply with the terms of the insurance policy when it failed to provide the insurer with notice of the underlying claim" and as such, "the insurer did not have a duty to defend the insured and [the injured third party's] claim failed as a matter of law." *Id.* at 148.

---

[2] McCleary argues that in the 9th Circuit, "whether an insured has provided timely notice of a claim and whether any delay should be excused are ordinarily questions of fact to be resolved by a jury." (Doc. 25 at 32.) But, as previously mentioned, because this Court is exercising diversity jurisdiction, it applies Montana's substantive law and federal procedural law. *Feldman*, 322 F.3d at 666.

On appeal, the Montana Supreme Court highlighted the pertinent portion of the policy language which provided that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." *Id.* at 149.  The court noted that the language was unambiguous and that "the provision was intended to provide [the insurer] with the opportunity to defend its interests and to prevent or mitigate adverse judgments." *Id.* at 150.  Because the insurer was not notified until two months after the default judgment had been entered, "[the insurer] was prejudiced in that it was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement, and to develop a strategy." *Id.* at 151.  Therefore, the district court did not err in ruling that no coverage existed, and the third party's claim failed as a matter of law.  *Id.*

The instant matter is akin to *Steadle*.  McCleary's Homeowner's Policy included clear, unambiguous language regarding McCleary's duties as the insured, including the duty to promptly notify Mountain West of any occurrence. McCleary highlights Mountain West agent John Nueman's email to McCleary, in which Nueman references defamation, as evidence that there is a dispute of fact as to when McCleary first provided notice of the Underlying Actions.  (Doc. 26 at 23.)  The Court believes no reasonable fact finder could consider that e-mail to

establish notice of a pending claim.  Rather, Mountain West was first put on notice of the claim when McCleary submitted a claim report form on April 6, 2022.

Even if a fact finder were able to reach the conclusion that the June 30 email proves that Mountain West was on notice of the Underlying Actions, Mountain West had already suffered substantial prejudice by that date.  Like in *Steadle*, McCleary failed to notify Mountain West of the Underlying Actions until after judgment had been entered against him.  This "deprived [Mountain West] of the ability to investigate, to locate witnesses, to appoint counsel, to engage in discovery, to negotiate a settlement, and to develop a strategy." *Steadle*, 260 P.3d at 151.  No reasonable fact finder could return a verdict for McCleary under these circumstances.

McCleary argues that Mountain West agents failed to properly procure the policy McCleary requested—the Country Home Policy—in April 2018, and therefore Mountain West is estopped from relying on the notice-prejudice rule. (Doc. 25 at 22.)  McCleary also contends that he did not provide notice to Mountain West because notice would have been futile, given that, according to McCleary, Mountain West issued him the wrong policy.  (*Id.* at 24.)  These arguments are in direct conflict with one another.  As McCleary himself points out,

> "to avail himself of equitable estoppel in this case, McCleary must demonstrate: (1) 'the existence of conduct, acts, language, or silence amounting to a representation or concealment of material facts;' (2) that Mountain West had 'knowledge of these facts at the time of the

representation or concealment, or the circumstances must be such that knowledge is necessarily imputed to' Mountain West; (3) *'the truth concerning these facts' was unknown to McCleary at the time he acted upon it*; (4) 'the conduct must be done with the intention or expectation that it will be acted upon by the other party, or have occurred under circumstances showing it to be both natural and probable that it will be acted upon;' (5) 'the conduct must be relied upon by' McCleary and lead him to act; and (6) McCleary must have acted upon 'the conduct in such a manner as to change [his] position for the worse.'"

(Doc. 25 at 13) (citing *Selley v. Liberty N.W. Ins. Corp.*, 998 P.2d 156, 158–59 (Mont. 2000) (emphasis added).  The Court cannot equitably estop Mountain West from relying on the notice-prejudice rule if McCleary knew the Underlying Actions were excluded from coverage.  As such, this argument also fails.

Pursuant to the Court's December 20, 2022, order, the stay on the duty to indemnify issue is automatically lifted.  Under Montana law, "where there is no coverage under a policy—and no corresponding duty to defend—there cannot be a duty to indemnify." *Farmers Ins. Exch. V. Wessel*, 477 P.3d 1101, 1107 (Mont. 2020.)  Because the Court concludes that, as a matter of law, Mountain West has no duty to defend McCleary in the Underlying Actions, the Court also concludes that Mountain West has no duty to indemnify McCleary.

## CONCLUSION

Based on the undisputed facts, a reasonable jury could not conclude that Mountain West has a duty to defend McCleary for the Underlying Actions.  As

21

such, Mountain West is entitled to summary judgment on the duty to defend and duty to indemnify issues.

Accordingly, IT IS ORDERED that the motion (Doc. 15) is GRANTED. Summary judgment is entered in favor of Plaintiff Mountain West.

The Clerk of Court is directed to enter judgment in Plaintiff's favor by separate document and close the case file.

Dated this 15th day of March, 2024.

Dana L. Christensen, District Judge
United States District Court

22